# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0229-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SAMUEL WOODY,

     Defendant-Appellant.

_____

Submitted October 29, 2019 – Decided November 14, 2019

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 12-06-0497.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Carlos Paul Morrow, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Samuel Woody appeals from an order denying his post-conviction relief (PCR) petition without an evidentiary hearing. He contends the court erred by failing to find he established a prima facie case of ineffective assistance of his trial counsel entitling him to either PCR or an evidentiary hearing. We disagree and affirm.

I.

We summarized the evidence supporting defendant's convictions for second-degree official misconduct, N.J.S.A. 2C:30-2, and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), in our opinion affirming the convictions, State v. Samuel Woody, No. A-4281-13 (Apr. 18, 2016) (slip opinion at 2–8). We briefly restate the pertinent evidence, as supplemented by additional facts supported by the PCR proceeding record.

K.C. was romantically involved with Plainfield Police Officer Fernando Sanchez. She became upset when she believed Officer Sanchez visited another woman's home. She removed his cellphone from his patrol car that was parked outside the woman's home and called the woman in an attempt to contact Officer Sanchez.

Defendant, who was also employed as a Plainfield police officer, later called defendant and requested that she return Officer Sanchez's cellphone. K.C.

knew of defendant and went to police headquarters to return the phone. K.C. spoke to defendant and Lieutenant Richard Urbanski at the headquarters, acknowledged she took the phone, and was photographed, fingerprinted and served with papers. At that point, she realized she was being charged with a crime, but she did not understand she had been arrested. Defendant advised K.C. she was free to leave the headquarters.

Defendant followed K.C. outside of the headquarters and asked her to meet him. She agreed and traveled to a location near her home. Defendant arrived in his police vehicle, was dressed in his police uniform, and had his police radio. He directed that K.C. follow him to another location near his cousin's home, and she complied.

Once at the location, K.C. and defendant parked their cars next to each other. Defendant exited his patrol vehicle, stood outside of K.C.'s vehicle, and told her she could receive five years in prison for taking the phone. He also said he would file the paperwork and enter the charge in the computer, and that he could "get rid of the paperwork." K.C. understood defendant's statement to mean he could dismiss the charges. Defendant said he could lose his job if he did so.

3

As K.C. was prepared to leave, defendant asked to see her vaginal area. K.C. placed her phone in the vehicle's ashtray and activated a recorder. She acceded to defendant's request to expose her vaginal area because she had a child and did not want to go to jail. The recording of the ensuing colloquy between K.C. and defendant, while she exposed her vaginal area to him, was the centerpiece of the State's evidence. It showed defendant requesting that K.C. expose her vaginal area in exchange for his agreement K.C. would not go to jail or court and would not get a summons. Because defendant stood outside of K.C.'s vehicle, she could not see him from the waist down. On the recording, K.C. asked defendant why his "hand [was] down there," and defendant responded, "I'm jerking on my dick."

Later that day, defendant served K.C. with a summons and a complaint with upgraded charges. K.C. asked defendant, "what about what I did," and he replied, "that never happened."

Defendant disputed K.C.'s version of the events, and testified he and K.C. had a dating relationship. He explained that he was off duty when he met with K.C. and that the recorded colloquy occurred during a consensual interaction. He denied masturbating or touching himself, and testified he never told K.C. to touch herself and that she did not touch herself.

4

The jury convicted defendant of second-degree official misconduct and fourth-degree criminal sexual contact. As noted, we affirmed defendant's conviction on his direct appeal, Woody, slip op. at 21, and the Supreme Court denied defendant's petition for certification, State v. Woody, 227 N.J. 111 (2016).

Defendant filed a timely pro se PCR petition generally alleging that "he was denied effective assistance of counsel at [the] trial level." The petition did not assert any facts detailing the alleged deficiencies in defendant's trial counsel's performance supporting the ineffective assistance of counsel claim. Defendant also filed a pro se brief arguing his trial counsel was ineffective.[1]

Defendant's assigned counsel subsequently filed a brief in support of the PCR petition.[2] The brief incorporated by reference the arguments in defendant's pro se brief, including claims that his trial counsel failed to: investigate an alibi defense and material witnesses; timely obtain grand jury transcripts; and impeach prosecution witnesses and object to their testimony. Defendant's PCR

---

[1] Defendant's pro se brief is not included in the record on appeal.

[2] Defendant's PCR counsel's brief is included in defendant's appendix on appeal and refers to an "amended [PCR] petition." The amended petition is not included in defendant's appendix on appeal. In defendant's brief on appeal, he does not cite to either his original or amended petitions as support for any of the factual assertions upon which he relies.

A-0229-18T1

counsel further argued that defendant's trial counsel was ineffective by failing to visit the crime scene and failing to interview Officer Sanchez and Lieutenant Urbanski. PCR counsel argued Lieutenant Urbanski would have testified defendant was off duty when he left police headquarters with K.C. and defendant did not take a patrol car when he left the headquarters.

PCR counsel's brief further argued that defendant's trial counsel's performance was deficient by failing to call Officer Sanchez as a witness. PCR counsel argued Sanchez would have testified that K.C. was extorting money from him and that K.C. "was in this for the money and had financial difficulty." He also alleged trial counsel did not call Officer Sanchez as a witness because Officer Sanchez's attorney and defendant's trial counsel were de facto partners who shared office space, and therefore his trial counsel had a conflict of interest.

PCR counsel further argued trial counsel was ineffective by failing to subpoena cellphone and GPS records that would have shown the incident took place in defendant's driveway and that defendant and K.C. communicated numerous times over the months prior to the incident. According to PCR counsel, trial counsel was also ineffective by failing to obtain police records that would have shown defendant did not have a patrol car when the incident occurred. Last, PCR counsel alleged defendant and his trial counsel were "at

A-0229-18T1

odds" up to the time of jury selection because of a dispute concerning trial counsel's fees.

The PCR court heard argument on the petition. Defendant's PCR counsel relied on the arguments asserted in his brief but focused on the claim that trial counsel should have called Officer Sanchez to testify that K.C. had looked to him for financial support. PCR counsel also reprised the claim that Officer Sanchez's counsel and defendant's trial counsel shared office space and were de facto partners, and therefore trial counsel had a conflict and failed to call Officer Sanchez as a witness at trial as a result.

The court rejected the claims, finding defendant failed to present any evidence that the purported error in not calling Officer Sanchez at trial resulted in prejudice. The court noted defendant testified at trial he had previously offered K.C. money and that the case was "about" money. The court also found the recording of the incident was "devastating," "unambiguous," "clear," and "was a tape of the actual incident," and that the recording showed "an unguarded moment of truth of [defendant] looking to take advantage of his position." Thus, the court concluded Sanchez's putative testimony would not have affected the trial outcome.

The court further found defendant failed to make any showing there were alibi witnesses whose testimony would have supported a defense, or that either Officer Sanchez or Lieutenant Urbanski would have provided any testimony supporting a defense to the charges. The court rejected defendant's other claims based on its conclusion defendant failed to demonstrate that any alleged failure of his trial counsel to investigate alibi witnesses, obtain GPS or cellphone records, or cross-examine witnesses differently would have effectively refuted the compelling recording of defendant's commission of the crimes with which he was charged and convicted. This appeal followed the court's entry of an order denying the PCR petition.

Defendant offers the following arguments for our consideration.

> POINT I
>
> DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL ENTITLING HIM TO POST-CONVICTION RELIEF OR AN EVIDENTIARY HEARING ON THE ISSUE OF THE FAILURE TO CALL SANCHEZ AS A CORROBORATING WITNESS TO HIS DEFENSE THAT [K.C.'S] CLAIM WAS ONLY A FORM OF EXPLOITATION AS A MEANS TO GAIN A FINANCIAL WINDFALL[.]
>
> A. APPLICABLE LAW[.]
>
> B. COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY PREPARE FOR TRIAL IN

HAVING FOREGONE A DEFENSE WITNESS
WHOSE TESTIMONY WOULD HAVE HAD THE
LIKELY EFFECT OF CHANGING THE OUTCOME
OF THE TRIAL[.]

II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). The de novo standard of review applies to mixed questions of fact and law. Harris, 181 N.J. at 420. Where, as here, an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. We apply that standard here.

An evidentiary hearing on a PCR petition is required where a defendant establishes a prima facie case for PCR under the standard established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 686 (1984), and the existing record is inadequate to resolve defendant's claim, State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)); see also State v. Preciose, 129 N.J. 451, 462–63 (1992). Under Strickland, a defendant first must show that his or her attorney's handling of the matter "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see also State v. Fritz, 105 N.J. 42, 58 (1987). A defendant also must show there exists a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Fritz, 105 N.J. at 60–61. A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. Strickland, 466 U.S. at 700; State v. Nash, 212 N.J. 518, 542 (2013); Fritz, 105 N.J. at 52.

Here, the court did not err in denying defendant's PCR petition. All of the purported factual allegations supporting his claim that trial counsel's performance was deficient are untethered to any competent evidence. PCR petitions must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity," State v. Jones, 219 N.J. 298, 312 (2014), "facts sufficient to demonstrate counsel's alleged substandard performance," ibid. (quoting Porter, 216 N.J. at 355). "[B]ald assertions" are insufficient to sustain a defendant's burden of establishing a prima facie case of ineffective assistance under the Strickland standard. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

When a defendant asserts that his or her counsel failed to call exculpatory witnesses, "he [or she] must assert the facts that would have been revealed, 'supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification.'" State v. Petrozelli, 351 N.J.

Super. 14, 23 (App. Div. 2002) (quoting Cummings, 321 N.J. Super. at 170). Defendant's claim his trial counsel was ineffective by failing to call Officer Sanchez and Lieutenant Urbanski as witnesses at trial is unsupported by any competent evidence about their putative testimony. Defendant's claims about what they would have said if called as witnesses is based on supposition and is founded solely on the arguments of counsel made to the PCR court. Thus, defendant presented the PCR court with a record bereft of any competent evidence about the testimony he contends the witnesses would have provided. Lacking such evidence, defendant could not, and did not, satisfy his burden of demonstrating that his trial counsel's performance was deficient based on his alleged error in not calling either of the witnesses at trial. The lack of evidence also requires a finding that defendant failed to establish that had the witnesses been called, there is a reasonable probability the result of the trial would have been different.

Defendant's claims concerning his trial counsel's alleged other errors suffer from the same fatal infirmity. There was no competent evidence presented to the PCR court establishing that GPS or cellphone data would have yielded evidence relevant to the determination of defendant's guilt or innocence, or that records would show defendant was off duty or did not have a patrol car

11

when the recorded incident occurred. There was no evidence establishing defendant's trial counsel and Officer's Sanchez's counsel shared office space or were de facto partners, that defendant's trial counsel had a conflict of interest, or that defendant and his trial counsel were "at odds" prior to trial over a fee dispute. Defendant did not provide any competent evidence supporting a purported alibi defense or establishing what additional pretrial investigation would have yielded that would have supported his defense or made a difference at trial. As our Supreme Court has explained, "when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Porter, 216 N.J. at 353 (quoting Cummings, 321 N.J. Super. at 170). Defendant provided no such evidence here.[3]

In sum, defendant's claims that his trial counsel's performance was deficient constitute nothing more than bald assertions and arguments that are wholly unsupported by any competent evidence presented to the PCR court.

_____

[3] We do not suggest that had defendant produced some competent evidence supporting his numerous factual claims that he would have sustained his burden under the Strickland standard. A determination of whether a defendant satisfies the Strickland standard is dependent on a consideration of competent evidence supporting a defendant's PCR petition. No such evidence was presented here.

A-0229-18T1

The court correctly determined defendant failed to satisfy his burden of presenting evidence establishing that his trial counsel's performance was deficient.  See Strickland, 466 U.S. at 688.   Defendant also failed to present competent evidence demonstrating there is reasonable probability that but for his trial counsel's purported errors the result of his trial would have been different.[4]  Id. at 694.  Because defendant failed to present evidence satisfying both prongs of the Strickland standard, he was not entitled to an evidentiary hearing.  See id. at 700.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We also observe that even if we accepted defendant's unsupported allegations concerning the purported errors of his trial counsel, he fails to establish prejudice under the second prong of the Strickland standard.  As aptly noted by the PCR court, the incident giving rise to the charges against defendant was recorded, and the recording overwhelmingly established defendant's guilt; the recording demonstrates defendant suggested to K.C. that if she exposed her vaginal area to him, he would take action, as he could only in his role as police officer, to ensure she did not go to jail or court, or receive a summons.  As a result, and as the PCR court found, even if defendant's trial counsel committed the alleged errors, defendant did not demonstrate but for those errors there is a reasonable probability the result of his trial would have been different. Strickland, 466 U.S. at 694.